United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MELBA T. PADAONG, | ) | No. 07-3719 SC |
| Plaintiff, | ) ) | ORDER GRANTING IN PART PLAINTIFF'S |
| v. | ) ) | MOTION FOR SUMMARY JUDGMENT AND DENYING |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |
| Defendant. | ) ) ) | |

## I. INTRODUCTION

This matter is before the Court on cross-motions for summary judgment filed by the plaintiff Melba T. Padaong ("Plaintiff" or "Claimant") and the defendant Michael J. Astrue ("Defendant"). Docket Nos. 8, 11. Plaintiff submitted a Reply. Docket No. 12. Plaintiff seeks review and reversal of the Social Security Commissioner's final decision denying her claim for Social Security Disability Insurance benefits. For the reasons set forth below, the Court GRANTS in part Plaintiff's Motion for Summary Judgment and DENIES Defendant's Cross-Motion for Summary Judgment.

///
///
///

## II. BACKGROUND

Plaintiff, born in 1962, is a United States citizen and has worked continuously since she was 17 at a variety of jobs, including employment counselor, computer repair technician, and postal worker. Administrative Record ("AR") at 56-62, 195. Plaintiff has two years of college and an Associates degree and, at the time she filed her application for Disability Insurance Benefits in 2003, she was married and lived with her husband and their two daughters. Id. at 16, 53-54, 951. Plaintiff alleges disability beginning October 19, 1999, due to pain and weakness in her upper extremities and because of depression. Id. at 53, 193-94.

## III. LEGAL STANDARD

To qualify for disability benefits, a claimant must show that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A). In making this determination, "an ALJ [Administrative Law Judge] conducts a five step inquiry. 20 C.F.R. §§ 404.1520 & 416.920." Lewis v. Apfel, 236 F.3d 503, 508 (9th Cir. 2001).

> The ALJ first considers whether the claimant is engaged in substantial gainful activity; if not, the ALJ asks in the second step whether the claimant has a severe impairment (i.e., one that significantly affects his or her ability to function); if so, the ALJ asks in the

2

>         third step whether the claimant's condition meets or equals one of those outlined in the Listing of Impairments in Appendix 1 of the Regulations [20 C.F.R. §§ 404.1520(d) & 416.920(d)]; if not, then in the fourth step the ALJ asks whether the claimant can perform in his or her past relevant work; if not, finally, the ALJ in the fifth step asks whether the claimant can perform other jobs that exist in substantial numbers in the national economy. 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).

Id.

Courts may set aside a decision of the ALJ if it is not supported by substantial evidence. 42 U.S.C. § 405(g); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001). "Substantial evidence" is the relevant evidence which a reasonable person might accept as adequate to support the ALJ's conclusion. Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). In order to be "substantial," the evidence must amount to "more than a scintilla," but need not rise to the level of a preponderance. Holohan, 246 F.3d at 1202. Where the evidence could reasonably support either affirming or reversing the ALJ's decision, a court may not substitute its judgment for the ALJ's decision. Id.

## IV.  DISCUSSION

It is clear from Plaintiff's hearing and from the ALJ's report that Plaintiff satisfies the first and second steps of the five-step inquiry. It is undisputed that Plaintiff has worked only four days since October 19, 1999, the onset date of the alleged disability. AR at 17, 951. Plaintiff alleges that she was prevented from working longer because of her impairments. Id.

3

1 Furthermore, the ALJ found that the medical evidence demonstrates
2 that Plaintiff suffers from cervico-brachial syndrome, elbow
3 tendinitis, and thoracic outlet syndrome and that these
4 impairments are "severe" within the meaning of the Social Security
5 Regulations.  Id. at 17.

6 At step three, the ALJ found that, although Plaintiff's
7 impairments are severe, they are not "severe enough to meet or
8 medically equal, either singly or in combination, one of the
9 impairments listed [in the Regulations]."  AR at 17.  In reaching
10 this conclusion, the ALJ considered the impairment listings under
11 Sections 1.00, titled "Musculoskeletal System," and 11.00, titled
12 "Neurological."  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 1.00,
13 11.00.  Plaintiff does not contest these findings.

14 At step four, the ALJ found that Plaintiff could perform her
15 past relevant work as an employment counselor or eligibility
16 technician.  AR at 20.  In reaching this conclusion, the ALJ found
17 that Plaintiff's residual functional capacity was as follows:

> frequently lift/carry 5 pounds; occasionally lift/carry 10 pounds; stand/walk for a total of 6 hours in an 8-hour workday; sit for a total of 6 hours in an 8-hour workday; occasional keyboarding; occasional work at/above shoulder level; no repetitive forceful grasping; and no repetitive neck posturing at extremes of flexion, extension, bending, or rotating (e.g., looking over one's shoulder while changing lanes while driving.)

25 Id. (footnote omitted).

26 "Residual functional capacity" is defined by the Social
27 Security Regulations as the most an individual can still do after

4

considering the effects of physical and/or mental limitations, including pain, on a claimant's ability to perform in a work setting. 20 C.F.R. § 404.1545. In assessing a claimant's residual functioning capacity, an ALJ must "consider all symptoms, including pain, and the extent to which [these] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529. The ALJ must also consider any medical opinions that might reflect judgments about the nature and severity of the impairments and resulting limitations. 20 C.F.R. § 404.1527.

### A. **Plaintiff's Testimony**

As a threshold matter, the Court addresses the ALJ's treatment of Plaintiff's testimony. In reaching her conclusion that Plaintiff is not disabled, the ALJ discounted much of Plaintiff's testimony as not credible, stating: "Although the record supports the claimant's claims to some extent, there is a serious doubt as to the credibility of the claimant's allegations regarding the degree and extent of her limitations." AR at 20. At her hearing, Plaintiff testified to the following: she has constant pain in her lower arms and hands; she can drive for only 15 minutes or so before the pain begins flaring up; her pain flares up when she attempts to brush her teeth; her daughters brush her hair for her because she has difficulty grasping a hair brush; she has difficulty dressing herself and stays away from clothes with buttons or zippers; she has difficulty sleeping because of the pain; she takes Oxycontin and Lyrosel, which have helped reduce the pain; she still experiences spasms of pain,

5

1  especially when she over-exerts herself; she can stand for only 15
2  or 30 minutes before she becomes fatigued; and she can sit for
3  only 15 to 30 minutes at a time.  AR 949-65.
4      Although "[t]he ALJ is responsible for determining
5  credibility and resolving conflicts in medical testimony," <u>Saelee</u>
6  <u>v. Charter</u>, 94 F.3d 520, 522 (9th Cir. 1995) (internal quotation
7  marks omitted), "[d]enial of benefits cannot be based on the ALJ's
8  observation of [the claimant], when [the claimant's] statements to
9  the contrary . . . are supported by objective evidence."
10 <u>Perminter v. Heckler</u>, 765 F.2d 870, 872 (9th Cir. 1985).  If the
11 ALJ does reject a claimant's testimony, he or she must provide
12 "clear and convincing reasons" for doing so.  <u>Holohan</u>, 246 F.3d at
13 1208.  "General findings are insufficient; rather, the ALJ must
14 identify what testimony is not credible and what evidence
15 undermines the claimant's complaints."  <u>Lester v. Chater</u>, 81 F.3d
16 821, 834 (9th Cir. 1996).  Moreover, this evidence must be
17 "substantial."  <u>Holohan</u>, 246 F.3d at 1208.  For the following
18 reasons, the Court finds that the ALJ's justifications for
19 rejecting Plaintiff's testimony are not "clear and convincing."
20 <u>Id.</u>
21     The ALJ provided two reasons for finding Plaintiff's
22 testimony not credible.  The first was the fact that Plaintiff had
23 attempted to ski in December 2000, more than one year after
24 Plaintiff's alleged period of disability began, and, as a result
25 of this attempt, required knee surgery.  AR at 541.  The ALJ
26 rightly noted that skiing is "an activity . . . very inconsistent
27 with the limitations described by the claimant at her hearing."
28

6

Id. at 20. Although Plaintiff's attempt to ski is troubling, it is worth noting that this incident occurred more than four years before Plaintiff testified at her hearing. Id. at 956.

The second reason provided by the ALJ was that Plaintiff's Third Party Function Report (the "Function Report") provided evidence that contradicted Plaintiff's testimony and therefore undermined Plaintiff's credibility. Id. at 20. The Function Report is a questionnaire provided by the Social Security Administration to a third party, in this case Plaintiff's husband. Id. at 227. The questions are designed to elicit the degree to which the claimant's illnesses, injuries, and/or conditions limit his or her activities. Id.

In her order, the ALJ stated that "the Third Party Function Report states that the claimant can walk 1-2 miles before resting, lift 5 pounds, take out the garbage, put clothes in the washer, make lunches for her daughters, drive her daughters to school, and pay attention for long periods." Id. at 20. The ALJ held that these responses in the Function Report undercut Plaintiff's credibility. Read in its entirety, however, the Function Report supports, rather than undermines, Plaintiff's testimony. For example, the Function Report actually states that although Plaintiff can put clothes in washer, she cannot pull them out because the clothes are too heavy for her to handle when they are wet. Id. at 229. The Function Report further states that Plaintiff helps her daughters prepare their lunches, not that she prepares them on her own. Id. at 228. In addition, the Function Report clearly states that the only food preparation Plaintiff can

7

1 undertake for herself is to place leftovers in the microwave to
2 reheat them. Id. at 229. Moreover, although the report indicates
3 that Plaintiff does, on occasion, drive her daughters to school,
4 it also states that she cannot even drive across town without
5 tightness and pain in her arms. Id. at 234.

6 The Function Report also contains the following information:
7 Plaintiff, because of the pain in her hands and arms, is unable to
8 button or zipper her own clothes; she cannot brush her own hair
9 without assistance; she is awoken at night because of the pain in
10 her arms and hands; she is unable to ride bicycles anymore because
11 she is unable to put weight on her hands; she is no longer able to
12 use her hands to garden, even though gardening was one of her
13 favorite hobbies; and she is unable to hold up a book while
14 reading it. Id. at 227-34. Read in its entirety, rather than
15 selectively, the Function Report actually provides substantial
16 support for Plaintiff's testimony regarding her pain and
17 corresponding limitations.

18 For these reasons, the Court finds that the ALJ's explanation
19 for her conclusion that Plaintiff's testimony was not credible is
20 not "clear and convincing." Holohan, 246 F.3d 1208. Although
21 Plaintiff's attempt to ski almost a year after the alleged onset
22 of disability sows some doubt as to her physical limitations at
23 that time, given that the ski incident occurred more than four
24 years before the hearing, and almost eight years before this
25 Order, its probative value is significantly diminished. This is
26 especially true when viewed in light of the evidence supporting
27 Plaintiff's claims. Furthermore, the ALJ's reliance on the
28

8

Function Report for her adverse credibility finding is far from persuasive. Accordingly, the ALJ's adverse credibility finding was in error, as she did not provide "clear and convincing reasons," supported by substantial evidence, for her conclusion. Holohan, 246 F.3d at 1208; see also Lester, 81 F.3d at 834 (stating "[g]eneral findings are insufficient; rather, the ALJ must identify what evidence undermines the claimant's complaints").

### B.  Medical Evidence

The next issue for the Court is whether the ALJ's findings in relation to Plaintiff's residual functional capacity are supported by substantial evidence. For the following reasons, the Court concludes that the ALJ's findings in this regard are contradicted by the evidence in the record.

"Under the [Social Security Administration] regulations, if a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight." Id. (citing 20 C.F.R. § 404.1527(d)(2)). "An ALJ may reject the uncontradicted medical opinion of a treating physician only for clear and convincing reasons supported by substantial evidence in the record." Id. (internal quotation marks omitted). In addition, the ALJ "is required to give weight not only to the treating physician's clinical findings and interpretations of test results, but also to his subjective judgments." Lester, 81 F.3d at 832-33. "Generally, a treating physician's opinion carries more weight

9

than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan, 246 F.3d at 1202.

Contrary to the ALJ's determination of Plaintiff's residual functional capacity, Dr. Quan, Plaintiff's treating physician, had previously diagnosed the following limitations for Plaintiff: no repetitive neck motions; no flexing or extending of neck; no keyboard work; no repetitive or forceful grasping; no holding of phones; lifting or carrying limited to 10 pounds; standing limited to 30 minutes at one time and four hours in one day; walking limited to 20 minutes at one time and 2 hours total in one day; sitting limited to 30 minutes at one time and four hours total in one day with neck in neutral position. AR at 760. These limitations are at odds with those found by the ALJ, which, as stated above, include standing and walking for a total of 6 hours in an 8-hour workday; sitting for a total of 6 hours in an 8-hour workday; occasional keyboard work; occasional work at/above shoulder level; no repetitive forceful grasping; and no repetitive neck posturing at extremes of flexion or extension. Id. at 20.

Although the ALJ failed to explain why the opinion of Plaintiff's treating physician was not accorded controlling weight in the ALJ's determination of Plaintiff's residual functional capacity, it appears that the ALJ relied on the report of an examining physician, Dr. Wirganowicz, and the reports of two State agency medical consultants who reviewed Plaintiff's medical records. Id. at 18-19. Dr. Wirganowicz examined Plaintiff at the request of the Social Security Administration and concluded the

10

1  following: Plaintiff suffers from chronic upper extremity pain and
2  weakness; her sensation, motor strength and reflexes are within
3  normal limits; she has no deformities in her upper extremities;
4  and there was no objective evidence of nerve compression or
5  radiculopathy in the upper extremities. Id. at 431-32. From this
6  diagnosis, Dr. Wirganowicz opined that Plaintiff "should be able"
7  to do the following: lift 25 pounds frequently or 50 pounds on an
8  occasional basis; sit, stand, or walk for a duration of 6 hours in
9  a normal workday; and use her upper extremities for gross motor
10 and fine manipulative movements. Id. at 432.

11    The State agency medical consultants, after reviewing
12 Plaintiff's medical records, made similar findings to those of Dr.
13 Wirganowicz. They also found that Plaintiff had no postural
14 limitations, no limitations on reaching or handling, and no
15 limitations on fine manipulation with her fingers. Id. at 698-
16 706.[1]

17    After reviewing Dr. Wirganowicz's and the consultants'
18 conclusions regarding Plaintiff's limitations, the Court finds
19 that the ALJ failed to provide clear and convincing reasons
20 supported by substantial evidence for rejecting the limitations
21 proposed by Plaintiff's treating physician. See Holohan, 246 F.3d

---

[1] It is worth noting that the medical consultants who made these findings likely did so in less than 20 minutes, as the forms provided to the consultants by the Social Security Administration contained the following statement: "We [the Social Security Administration] estimate that it will take about 20 minutes to read the instructions, gather the facts, and answer the questions [on the forms]." Id. at 698. Aside from the fact that these medical consultants did not examine Plaintiff, it is difficult to ascribe much weight to medical conclusions gleaned from less than 20 minutes review of a patient's records.

at 1202 (stating "[a]n ALJ may reject the uncontradicted medical opinion of a treating physician only for clear and convincing reasons supported by substantial evidence in the record"); see also Lester, 81 F.3d at 830 (holding that "[e]ven if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record for so doing") (internal quotation marks omitted); id. at 834 (stating that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician").

It should be noted that the ALJ rejected the lifting/carrying capacities recommended by Dr. Wirganowicz and the medical consultants as being too high, yet adopted, without explanation, the remaining limitations instead of the limitations prescribed by Dr. Quan, the treating physician. Furthermore, the ALJ paid little, if any, attention to the recommendations made by Dr. Masem, a hand specialist who examined Plaintiff on several occasions and who concluded that Plaintiff "appears to have a remarkable bilateral neck and upper extremity repetitive strain injury, with symptoms and physical findings involving the entire arm bilaterally as well as her neck." AR at 114. Regarding Plaintiff's disability status, Dr. Masem stated: "I would consider [Plaintiff] to be presently permanent [sic] and stationary. She has permanent residuals which preclude her from repetitive manipulation in a sustained and continuous fashion." Id. at 169.

12

Dr. Masem further stated that Plaintiff "is clearly not a candidate to return to her previous occupational activities as an employment counselor for Alameda County." Id. Regarding causation, Dr. Masem opined that Plaintiff's "condition is consistent with cumulative trauma as a result of repetitive manual activities in the course of her employment." Id.

Failure to consider Dr. Masem's conclusions is troubling, particularly because the Social Security "regulations give more weight to . . . the opinions of specialists concerning matters relating to their specialty over that of nonspecialists, see [20 C.F.R.] § 404.1527(d)(5)." Holohan, 246 F.3d at 1202. Equally vexing is the fact that even though Dr. Masem, a hand specialist, concluded that Plaintiff "is clearly not a candidate to return to her previous occupational activities as an employment counselor for Alameda County," AR at 169, the ALJ, without addressing Dr. Masem's opinion, nonetheless stated that "the claimant could return to her past relevant work as an . . . employment counselor." Id. at 20.

For the reasons stated above, the Court finds that the ALJ's findings regarding Plaintiff's limitations and residual functional capacity are contradicted by the evidence in the record. In light of the opinions of her doctors, the objective medical evidence, and Plaintiff's testimony, it is clear that, contrary to the ALJ's findings, Plaintiff is unable to perform in her past relevant work as either an employment counselor or eligibility technician. As noted above, Dr. Masem, a hand specialist, specifically found that Plaintiff could not return to her previous work as an employment

13

counselor. As the record does not contain substantial evidence to support the ALJ's contrary finding, and because the ALJ did not provide any reasons for ignoring Dr. Masem's opinion, the ALJ's determination that Plaintiff can return to her previous job as an employment counselor was in error.

Furthermore, based on the testimony of the vocational expert at Plaintiff's hearing, the Court concludes that Plaintiff would be equally unable to return to her previous job as an eligibility technician. The vocational expert testified that the physical requirements of an eligibility technician and an employment counselor are essentially the same. In describing the requirements of an eligibility technician, the expert stated: "She was an eligibility technician from '99 to 2000 which is skilled work at SVP 6. It is generally performed at the sedentary level and has a DOT code of 195267010. It requires frequent reaching and frequent handling and is usually performed with occasional fingering." AR at 965. In describing the requirements for an employment counselor, the expert stated: "It's SVP 6, sedentary with a . . . DOT code of 1662670101 and it requires occasional reaching, frequent handling and occasional fingering." Id. at 966. The primary difference between the two is that an employment counselor only requires occasional reaching, while an eligibility technician requires frequent reaching. As the evidence in the record demonstrates that Plaintiff would not be able to return to her position as an employment counselor, it necessarily follows that Plaintiff would also be unable to return to her previous employment as an eligibility technician. This is especially true

14

given that Plaintiff's treating physician stated that Plaintiff's limitations include "no reaching with upper extremities." AR at 760. For these reasons, the ALJ erred in finding that Plaintiff had the residual functional capacity to perform past relevant work at step four of the process.

"If a claimant does not have the residual functional capacity to perform past relevant work, then it is the Commissioner's burden at step five to establish that the claimant can perform other work." Lewis, 236 F.3d at 517. Although the ALJ found that Plaintiff could perform past relevant work at step four, she also made findings regarding Plaintiff's ability to perform other work under step five. Relying on hypothetical questions to the vocational expert, the ALJ concluded that, given Plaintiff's age, education, past relevant work experience, and residual functional capacity, Plaintiff was capable of working in other jobs in the national economy, including as a surveillance system monitor, callout operator, election clerk, counter clerk, and furniture rental clerk. AR at 21.

For the following reasons, the Court finds that the ALJ erred in concluding that the Commissioner satisfied his burden at step five in establishing that Plaintiff can perform other work. In reaching her conclusion, the ALJ relied heavily, if not exclusively, on the hypothetical questions she asked of the vocational expert. Id. at 970-74. "A vocational expert's testimony in a disability benefits proceeding is valuable only to the extent that it is supported by medical evidence." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (internal quotation

15

marks omitted). Furthermore, a "hypothetical question should set out all of the claimant's impairments." Id. (internal quotation marks omitted). In the present case, none of the hypothetical questions posed by the ALJ to the vocational expert contained any limitations on standing or sitting, yet there is substantial medical evidence in the record that Plaintiff should only sit for 30 minutes at a time and stand for 30 minutes at a time. See, e.g., AR at 760. In addition, Plaintiff's doctor stated that Plaintiff was precluded from reaching with her upper extremities, id., but the ALJ's hypothetical includes the limitation of "occasional over head [sic] work." Id. at 972-73. Furthermore, while Plaintiff's physician recommended no keyboard work, the ALJ, without explanation, included in her hypothetical a limitation of "occasional keyboarding." Id. at 966.

Finally, despite significant evidence in the record regarding the pain Plaintiff's medical conditions cause, the ALJ's hypothetical did not include any mention of Plaintiff's pain. See Gallant, 753 F.2d at 1456 (stating "[b]ecause claimant's allegations of persistent disabling pain are supported by the medical evidence in this case and the ALJ had no clear or convincing reasons for rejecting such claims, claimant's pain should have formed a part of the ALJ's question to the expert"). Given that the ALJ's hypothetical did not "set forth all of [Plaintiff's] impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." Id.

For these reasons, the Court concludes that the Commissioner

16

did not meet his burden of proving that Plaintiff is capable of performing other work within the national economy.  The record contains substantial evidence that Plaintiff is disabled within the meaning of the Social Security Act, and the decision of the ALJ is reversed.

The final issue for the Court is a determination of the onset date of Plaintiff's disability.  Plaintiff alleges that she became disabled on October 19, 1999.  The evidence, however, does not support this date.  This is especially so considering that Plaintiff attempted to ski December 2000.  Rather, the Court finds that the earliest date for onset of disability as supported by the evidence is January 10, 2005.  On this day, Plaintiff's treating physician issued a report precluding Plaintiff from using a keyboard, from sitting or standing for more than 30 minutes, from holding a phone, from flexion, extension, and repetitious motions of the neck, and from any repetitive manipulation.  AR at 760.  This report, in conjunction with the other evidence in the record, establishes that Plaintiff was disabled on January 10, 2005.  Although this disability may have manifested itself earlier, there is insufficient evidence to prove it.

### C. **Mental Health Impairments**

Finally, Plaintiff challenges the ALJ's determination that her mental health impairments are not severe and do not impose limitations on her ability to work.  After careful review of the record and the parties' papers, the Court cannot conclude that the ALJ's decision regarding Plaintiff's mental health impairments is not supported by substantial evidence.

17

Although Plaintiff was hospitalized for two days in March 1999 after becoming suicidal, the relevant evidence since that time, including Plaintiff's own testimony and numerous doctors' reports and evaluations, is consistent with the ALJ's determination that Plaintiff's mental impairments are not "severe." At her hearing, Plaintiff testified that she no longer has suicidal thoughts and instead "just get[s] very frustrated . . . with the limitations of [her] hands." AR at 961. It is difficult to reconcile this testimony with Plaintiff's position in her Motion that her mental impairments, especially her depression, are so severe as to preclude her from maintaining a job.

The medical reports, although at times in tension with each other, also do not present substantial evidence that Plaintiff suffers from "severe" mental impairments. The following is a representative sampling of the various reports on Plaintiff's mental health status: Plaintiff "has low self-esteem, a loss of confidence and difficulty problem solving," AR at 102; she is "psychologically able to perform her essential job functions," id.; she has "clinically significant distress in important areas of functioning," id. at 103; "[p]roblem solving and reasoning are noted to be in the above-average range," id.; "she is extremely depressed" and "anxious, fearful, and guilt-ridden, and likely to withdraw from interpersonal conflicts," id.; "[s]he is overly sensitive to criticism, as the result of traumatic experiences," id.; her "MCMI-III Personality scale profile suggests an individual who is currently in a collapsed psychological state," id. at 107; she "suffers from chronic and acute depression," id.;

18

"[s]he is pre-occupied with her lack of social and occupational effectiveness," id.; and Plaintiff was diagnosed with "Depressive Disorder" and although she "is able to get along adequately with others," "she may have difficulty with the stress of employment." Id. at 437.

Taken as a whole, these reports and diagnosis, although clearly indicating that Plaintiff suffers from some mental health issues, fall short of demonstrating that the ALJ's determination was not without substantial evidence. Accordingly, the Court upholds the finding of the ALJ regarding Plaintiff's mental health impairments.

### V.  **Whether Remand Is Necessary**

"The decision to remand the case for additional evidence or simply to award the benefits is within the discretion of the court." Erickson v. Shalala, 9 F.3d 813, 819 (9th Cir. 1993). Where the record is fully developed, remand is unnecessary. Id. In the present case, the record is fully developed. There are no "outstanding issues that must be resolved before a determination of disability can be made." Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000). Nor would "additional proceedings . . . remedy defects in the original administrative proceeding . . . ." Marcia v. Sullivan, 900 F.2d 172, 176-77 (9th Cir. 1990) (internal quotation marks omitted).

///

///

///

19

**VI. CONCLUSION**

For the foregoing reasons, the Court GRANTS in part Plaintiff's Motion for Summary Judgment and DENIES Defendant's Motion for Summary Judgment. The matter is remanded to the Commissioner so that he may calculate and award benefits with an onset date of January 10, 2005.


IT IS SO ORDERED.


Dated: August 5, 2008

_____
UNITED STATES DISTRICT JUDGE